Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/08/2021 09:11 AM CDT

Elicia Marie Johnson, appellee, v. Matthew
Eugene Johnson, appellant.
___ N.W.2d ___

Filed March 12, 2021.    No. S-20-428.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where
   a party seeks remedial relief for an alleged violation of a court order,
   an appellate court employs a three-part standard of review in which (1)
   the trial court's resolution of issues of law is reviewed de novo, (2) the
   trial court's factual findings are reviewed for clear error, and (3) the trial
   court's determinations of whether a party is in contempt and of the sanc-
   tion to be imposed are reviewed for abuse of discretion.
2. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce
   decree presents a question of law, in connection with which an appellate
   court reaches a conclusion independent of the determination reached by
   the court below.
3. **Courts: Jurisdiction: Divorce: Property Settlement Agreements.** A
   district court, in the exercise of its broad jurisdiction over marriage dis-
   solutions, retains jurisdiction to enforce all terms of approved property
   settlement agreements.
4. **Courts: Jurisdiction.** A court that has jurisdiction to make a decision
   also has the power to enforce it by making such orders as are necessary
   to carry its judgment or decree into effect.
5. **Contempt.** Civil contempt proceedings are instituted to preserve and
   enforce the rights of private parties to a suit when a party fails to com-
   ply with a court order made for the benefit of the opposing party.
6. **Courts: Jurisdiction: Divorce: Contempt.** A court's continuing juris-
   diction over a dissolution decree includes the power to provide equitable
   relief in a contempt proceeding.
7. **Contempt: Courts: Equity.** Contempt proceedings may both compel
   obedience to orders and administer the remedies to which the court has
   found the parties to be entitled. Where a situation exists that is con-
   trary to the principles of equity and which can be redressed within the

scope of judicial action, a court of equity will devise a remedy to meet the situation.

8. **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.

9. **Divorce: Judgments: Intent.** The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation.

Appeal from the District Court for Sarpy County: Stefanie A. Martinez, Judge. Affirmed.

John A. Kinney and Jill M. Mason, of Kinney & Mason, P.C., L.L.O., for appellant.

No appearance for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Matthew Eugene Johnson appeals from a district court order finding that the decree that dissolved his marriage required him to pay for his daughter's college education and automobile. He contends that the district court order was punitive and thus inappropriately entered in a civil contempt proceeding, and that the district court should have found that he was not obligated to pay for the expenses at issue because his daughter had repudiated her relationship with him. We find no merit to Matthew's contentions and therefore affirm.

## BACKGROUND

*Dissolution Decree.*

Matthew and Elicia Marie Johnson were married in 1995. During the marriage, they had two children: Kamren Johnson, born in 1999, and Mattison Johnson, born in 2001.

In 2011, Elicia initiated divorce proceedings in the Sarpy County District Court. The parties negotiated a property settlement agreement and a parenting plan, both of which were approved by the district court and incorporated in a decree dissolving the marriage.

Under the decree, Matthew and Elicia were granted joint legal custody of both children. Physical custody of Mattison was awarded to Elicia, with parenting time for Matthew. Physical custody of Kamren was awarded to Matthew, with parenting time for Elicia.

The decree contained a provision requiring Matthew to establish college savings plans for Kamren and Mattison. It provided as follows:

COLLEGE FUNDS FOR MINOR CHILDREN. [Matthew] shall establish college savings plans for the minor children as follows: [Matthew] shall have discretion as to the amount of contributions he makes in each year and the manner in which he invests his contributions, provided that the college account for each child is "fully funded" by the time that the child graduates from high school. Each child's account shall be considered "fully funded" at the point where its balance equals four (4) times the rate for undergraduate tuition, books, lab fees, and room and board at the University of Nebraska at Lincoln in the year immediately following the child's graduation from high school. [Matthew] shall provide [Elicia] with documentation confirming that each account has been "fully funded" on or before the date of each child's graduation from high school.

Another provision of the decree concerned automobiles for the children. It required Matthew to provide each child with an automobile upon turning 16 years old. The automobiles were to be of the same age and the same or equivalent model. It further provided that Matthew was to pay for the automobiles' registration, insurance, and repairs in addition to their purchase price.

In 2016, Matthew and Elicia asked the district court to approve a stipulated modification to the dissolution decree. The parties stipulated to changes in the parenting plan and Matthew's child support obligations. The stipulated order of modification also contained a provision addressing Matthew's obligation to pay for the children's automobile expenses. It provided that Matthew "shall be financially responsible for providing both Kamren and Mattison suitable, safe, working cars for the children and the auto insurance and maintenance for said cars."

*Contempt Proceedings.*

In December 2019, Matthew filed a verified application for an order to show cause in which he asked the district court to find Elicia in contempt. He alleged that Elicia had consistently denied Matthew the parenting time with Mattison allotted to him by the decree.

In January 2020, Elicia filed a verified application for an order to show cause in which she asked the district court to find Matthew in contempt. In the application, Elicia alleged that Matthew had refused to pay for an automobile and automobile insurance for Mattison, refused to pay for Mattison's tuition and related expenses at the University of Nebraska-Lincoln, and refused to provide to Elicia documentation proving the college savings plan required by the decree was fully funded. Elicia contended that the decree required Matthew to take such actions, that his failure to do so was willful and malicious, and that he should be held in contempt.

In March 2020, the district court held a hearing on the parties' contempt applications. At the hearing, Matthew testified that he had not had parenting time with Mattison since the summer of 2018, that Mattison did not respond to his attempts to communicate with her, and that he had no relationship with her. He testified that he believed Mattison had repudiated her relationship with him and that, as a result, he was no longer willing to pay for Mattison's college education or automobile expenses. Matthew testified that he had funds available to

pay for Mattison's college tuition and related expenses, but admitted that he had not provided Elicia with documentation of such funds. He also testified that he had not received information regarding the specific expenses Elicia requested he pay until a few weeks before the hearing.

Mattison also testified at the hearing. She testified she was 18 years old and a student at the University of Nebraska-Lincoln. She testified that when she went to Matthew's home for his scheduled parenting time, Matthew was often working or sleeping, and that she was not comfortable there. She admitted that at some point in 2018, she stopped going to Matthew's home during his scheduled parenting time. She also acknowledged that she had not communicated with Matthew and had not had a meaningful relationship with him for the last 1½ years. She testified that she did not trust him and that while she would be willing to go to counseling with him if he would agree, she did not otherwise want him to be a part of her life.

Elicia was the final witness at the hearing. During her testimony, the district court received into evidence spreadsheets itemizing the out-of-pocket expenses Elicia had incurred for Mattison's college education and automobile. The spreadsheets listed $12,715.43 in college expenses and $10,882.02 in automobile expenses. Elicia testified that she had notified Matthew of these expenses, but that he refused to pay them.

*District Court Order.*

After the hearing, the district court entered an order. It rejected Matthew's argument that he should not be obligated to pay the expenses at issue because Mattison had repudiated him as her father. The district court explained that it found no authority under Nebraska law supporting the argument and that it contradicted longstanding Nebraska law requiring parents to provide support for their children until they reach the age of majority.

The district court went on to address the various reasons why Elicia contended that Matthew should be held in

contempt. The district court found that the decree clearly required Matthew to pay the automobile expenses, but that because Matthew was only recently presented with the specific expenses Elicia requested, and because Matthew had no part in choosing the automobile in violation of the "intent and spirit" of the relevant decree provision, he was not in contempt. The district court clarified that while Matthew was not in contempt, he was still obligated to pay the automobile expenses under the decree.

The district court found the decree less clear regarding college expenses, pointing out that it lacked language specifying how or when the funds were to be disseminated. It observed that the evidence showed that Matthew had complied with the college savings plan provision to the extent that he had established a college savings account that was fully funded as defined by the decree. The district court found that Matthew had not, however, complied with the provision of the decree requiring that he provide Elicia with documentation of the account. It concluded that Matthew was in contempt for not providing this documentation, but not in contempt for failing to pay the expenses. The district court ordered Matthew to pay $10,882.02 for the automobile expenses and $12,715.43 for the college expenses. It ordered him to provide Elicia with documentation of the college savings account within 5 business days of its order.

The district court found that Elicia was in contempt for denying Matthew his parenting time.

Matthew appealed from the district court's order. Elicia did not appeal.

ASSIGNMENTS OF ERROR

Matthew assigns three errors on appeal. He contends, reordered and restated, that the district court erred (1) by entering a damages award against him; (2) by ordering that he pay an unconditional fine; and (3) by failing to find that under the doctrine of repudiation, he owed no duty to pay the college or automobile expenses.

## STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020).

[2] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

## ANALYSIS

*District Court's Remedy.*

Matthew's first two assignments of error are based on an incorrect understanding of the district court's order. Matthew asserts that the district court's order that he pay Mattison's college and automobile expenses was either a "type of damages award" or an unconditional fine, and he contends that neither are a permitted remedy for contempt. See brief for appellant at 7. The district court's order that Matthew pay Mattison's college and automobile expenses was not, however, a remedy for contempt.

The district court found that Matthew was in contempt for failing to provide Elicia with documentation regarding the funding of the college savings account for Mattison and ordered him to provide that documentation within 5 days. Because Matthew was presented with Mattison's automobile expenses shortly before the hearing, the district court found that he was not in contempt for failing to pay them. But while the district court found Matthew was not in contempt for failing to pay expenses about which he was only recently

notified, it found that the decree required that he pay those expenses. Similarly, the district court found that Matthew was not in contempt for not paying Mattison's college expenses because the decree was not clear about how or when he was to pay them, but the district court still interpreted the decree to require that he pay such expenses.

[3,4] By ordering Matthew to pay Mattison's automobile and college expenses, the district court was not entering a damages award or fining Matthew for contempt; it was exercising its authority to interpret and enforce the decree. A district court, in the exercise of its broad discretion over marriage dissolutions, retains jurisdiction to enforce all terms of approved property settlement agreements. *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015). A court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect. *Id.*

[5-7] The district court's authority to enforce the decree was not limited by the fact that Elicia initiated contempt proceedings. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Id.* Contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled. Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id.* Although the district court apparently concluded that Matthew did not willfully violate the decree by not paying Mattison's automobile and college expenses, and therefore did not hold him in contempt for failing to do so, it still had authority to enforce the decree by compelling him to follow it.

*Repudiation.*

Matthew also argues that because Mattison refuses to have any meaningful relationship with him, he should not have to pay her automobile or college expenses, and the district court erred by ordering him to do so. Matthew claims his argument is supported by a doctrine of repudiation or estrangement recognized in decisions from other states. He relies on cases from Indiana and Pennsylvania in which courts held that a parent was not required to contribute to his or her child's college education because the child repudiated the relationship with the parent. See, e.g., *McKay v. McKay*, 644 N.E.2d 164 (Ind. App. 1994); *Milne v. Milne*, 383 Pa. Super. 177, 556 A.2d 854 (1989). As we will explain, however, those decisions do not neatly map on to either the facts of this case or Nebraska law.

At the time of the Indiana and Pennsylvania decisions relied upon by Matthew, the law of those states permitted courts to order divorced parents to contribute to their child's college education after the child reached the age of majority. See, *McKay, supra*; *Milne, supra*. In determining whether to order such a support obligation, courts in those states consider whether and to what extent the parents, if still married, would have contributed to the child's college education. See, *McKay, supra*; *Milne, supra*. In the decisions relied upon by Matthew, the courts reasoned that because a parent would not ordinarily be inclined to contribute to the college education of a child who had rejected a relationship with the parent, a parent should not be obligated by a court to do so. See, *McKay, supra*; *Milne, supra*.

Even if we were to adopt the repudiation doctrine articulated by these Indiana and Pennsylvania decisions as Matthew urges, it does not appear that would be of any assistance to Matthew in this appeal. Both courts emphasized that a parent could be spared from a college support obligation only if an *adult child* rejected a relationship with his or her parent. See, *McKay, supra*; *Milne, supra*. Mattison, however, was 18 years old and thus still a minor when the expenses at issue were

incurred. See Neb. Rev. Stat. § 43-2101(1) (Cum. Supp. 2020) (unless married, persons under 19 years of age are declared to be minors).

But even setting Mattison's age to the side, there is a more fundamental difference between this case and those Matthew relies upon—Matthew's college support obligation arose because of an agreement with Elicia, not as a result of unilateral judicial imposition. In fact, in Nebraska, an obligation to pay for a child's college expenses after the child has reached the age of majority could only come about through the parties' agreement. Unlike their Indiana and Pennsylvania counterparts, courts in Nebraska are not authorized to order a parent, over his or her objection, to contribute to the support of children beyond their majority as part of a marriage dissolution decree. Compare *Foster v. Foster*, 266 Neb. 32, 662 N.W.2d 191 (2003), with *McKay, supra*, and *Milne, supra*. Nebraska courts will, however, enforce an approved property settlement agreement voluntarily entered into by the parties which provides for postmajority child support. See *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018).

Because any obligation Matthew has to fund Mattison's college education came about as a result of his agreement with Elicia, we view the repudiation or estrangement doctrine recognized in the Indiana and Pennsylvania cases Matthew relies upon as inapplicable. On this point, we are in agreement with other courts, including one from Pennsylvania. In *Cook v. Covey*, 415 Pa. Super. 353, 609 A.2d 560 (1992), a Pennsylvania court held that the fact that a daughter was estranged from her father had no bearing on the father's college support obligation because the obligation resulted not from judicial fiat, but from the father's agreement with the mother. That court explained:

> The cases in which estrangement is relevant, however, have been those cases in which a child has asked the court to judicially impose on a parent an obligation to provide post-minority educational support in the

absence of a specific agreement by the parent to do so. . . . Since Father agreed, in writing, to pay [the daughter's] college expenses, the trial court did not judicially impose an obligation on Father. Rather, the court merely enforced an obligation that Father has already assumed. The agreement specifically imposes Father's obligation and is enforceable as written. The agreement is between Mother and Father. [The daughter] is a third-party beneficiary. As we cannot presume to know what concessions were made in the formation of the separation agreement, or what rights Mother may have relinquished in return for Father's promise to pay college expenses, we will not look beyond the written agreement. If the parties had intended Father's obligation to provide college support to be contingent on a continuing relationship with [the daughter], the qualifier presumably would have been included in the agreement. Accordingly, whether Father and [the daughter] were estranged does not affect Father's duty under the agreement with Mother.

*Cook*, 415 Pa. Super. at 358-59, 609 A.2d at 563. See, also, *Miller v. Miller*, No. M2017-01867-COA-R3-CV, 2018 WL 2411591 (Tenn. App. May 29, 2018) (unpublished opinion) (holding that mother was not relieved of contractual agreement to pay college expenses based on son's repudiation of relationship).

We find the reasoning of the court in *Cook* cogent and, for the same reasons, find that Matthew's obligations to pay for Mattison's expenses are controlled by the terms of the parties' property settlement agreement incorporated in the dissolution decree.

Like the agreement in *Cook*, the property settlement agreement reached by Matthew and Elicia does not make Matthew's obligations contingent on a continuing parent-child relationship. Matthew admitted this at oral argument, but advanced a different argument regarding the terms of the college savings plan provision. He contended that the provision required

that he establish an account, but did not specify that the money in the account must actually be used to pay for the children's college education. Matthew claimed that he could therefore refuse to pay Mattison's college expenses in response to her refusal to have a relationship with him.

[8,9] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019). Unlike disputes over the meaning of an ambiguous contract, the parties' subjective interpretations and intentions are wholly irrelevant to a court's declaration, as a matter of law, as to the meaning of an ambiguous decree. *Id.* The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation. *Id.*

We find that Matthew has not offered a reasonable interpretation of the decree's college savings plan provision. Matthew is correct there is no express language in the decree stating he must direct that money in the college savings plan be used to pay for his children's college education. Neither, however, is there language giving him discretion to withhold funds from one of his children pursuing a college education or language setting forth what is to happen to those funds if not used to fund the children's college educations. In addition, we believe the requirement that Matthew establish college savings plans "*for* the minor children" suggests that the money in the account was to be directed toward the children's college education should they pursue one. (Emphasis supplied.)

In addition, Matthew's argument that the decree does not require that the funds be used for the children's college education sweeps beyond any alleged rejection of him by Mattison. If, as he asserts, the decree requires only that he contribute money to a college savings account, he could refuse to pay

for his children's college education for any reason or no reason at all. A parent would presumably have discretion to financially contribute to his or her child's college education in the absence of a provision in a dissolution decree providing as much. It is thus difficult to discern what purpose would be served by requiring one party to a divorce to establish a college savings account for the parties' children, but also allowing that party sole discretion as to whether those funds will actually be used to pay for a child's college attendance. We find that the only reasonable interpretation of the college savings plan provision is that it requires Matthew to use the funds in the account to pay for Mattison's college education.

We do not believe the district court erred by rejecting Matthew's repudiation argument and requiring that he pay Mattison's college and automobile expenses.

## CONCLUSION

Because we find no merit to Matthew's arguments on appeal, we affirm the order of the district court.

AFFIRMED.