IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


RODGERS V. RODGERS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


TIMOTHY C. RODGERS, APPELLANT,

V.

JENNIFER L. RODGERS, NOW KNOWN AS JENNIFER L. HERNANDEZ, APPELLEE,
AND STATE OF NEBRASKA, INTERVENOR-APPELLEE.


Filed May 4, 2021.    No. A-20-631.


Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Rebecca J. Smith, of Smith Law Office, for appellant.

Meghan E. Wolf, of Nebraska Legal Group, P.C., for appellee.


RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Timothy C. Rodgers appeals from an order of the district court for Sarpy County which found that Jennifer L. Rodgers, now known as Jennifer L. Hernandez, was not in contempt for willfully violating the parenting provisions of the parties' modified parenting plan. For the reasons set forth below, we affirm.

### BACKGROUND

Timothy and Jennifer divorced in 2008. They had one child from their marriage, J.R., who was born in 2006. We note that the transcript provided does not include the decree of dissolution. However, from our record, we can determine the following sequence of events based on the district court's order of modification that it entered on February 5, 2020. The 2008 decree of dissolution entered with the consent of the parties, awarded Timothy sole legal and physical custody of J.R.

subject to Jennifer's parenting time. In September 2015, the parties modified custody through a consent decree in which the parties would have joint legal custody and Jennifer's parenting time would increase to 6 out of every 14 days.

In August 2016, Jennifer filed an application to show cause why Timothy should not be held in contempt. Five days prior to the evidentiary hearing on the show cause application in July 2017, Timothy was arrested and charged with possession of a controlled substance. The district court found Timothy in contempt of court for failing to provide Jennifer with court ordered parenting time. Timothy was permitted to purge himself by providing Jennifer with additional parenting time. In December 2017, Timothy was arrested and again charged with possession of a controlled substance. Shortly after his arrest, Timothy, without counsel, filed his original complaint to modify requesting the district court to alter the custody arrangement from sole physical custody to joint physical custody. Three days after filing his complaint to modify, he began to serve his jail sanction for failing to abide by the purge plan.

Jennifer filed a counterclaim in January 2018 requesting sole legal and physical custody of J.R. She also filed an ex parte request for sole custody which was granted by the court on February 12. The district court based that decision on Timothy's criminal charges and because he violated protection orders involving his own parents and Jennifer's husband, Lawrence. On May 21, Timothy, now represented by counsel, filed an amended complaint to modify seeking sole legal and physical custody of J.R.

Trial was held on the parties' complaints to modify in August 2019. The district court's order, entered on February 5, 2020, awarded sole legal and physical custody of J.R. to Jennifer. The district court noted that Timothy has been the subject of multiple protection orders, including one issued at the request of Lawrence, following an altercation at an exchange. The district court also noted Timothy's stalking of Jennifer and his demeanor and actions at the exchanges provided for indicia of the presence of domestic abuse. The district court determined that Timothy should have parenting time one evening per week and every other weekend in addition to holiday and vacation time. To ensure the safety of J.R., the district court determined that exchanges must occur in a neutral, public location.

On April 27, 2020, Timothy filed an application for an order for Jennifer to show cause why she should not be held in contempt for failing to allow Timothy to exercise his parenting time. In the application, Timothy alleged that Jennifer had willfully and contumaciously violated the modified parenting plan by denying Timothy's parenting time on numerous occasions. An evidentiary hearing on the affidavit and application for order to show cause was held on June 12. Timothy, Jennifer, and Lawrence testified at the hearing.

Timothy testified that there were not any difficulties in J.R. wanting to spend time with him until March 2020. At that time, J.R. asked Timothy if she could go to a shopping center with her friends and without Timothy. When he did not let her go, she told Timothy that he was "frustrating and annoying." Timothy explained that there were some minor issues while J.R. was in his care. For example, J.R. did not like the vegetables Timothy provided and that he required J.R. to do chores. Contrary to Timothy's testimony about his relationship with J.R., Jennifer testified that beginning as early as February 2020, there have been issues where J.R. has not wanted to see Timothy. She testified that J.R. has identified those reasons to her.

Previously, when Timothy was supposed to pick up J.R. from school, there was not a problem with her going with him. However, beginning in February 2020, J.R. refused to leave with Timothy when he tried to pick her up from school. J.R. sent a text message to Jennifer stating that she did not want to go with Timothy. Jennifer explained to J.R. that she had to go, even though she did not want to. Jennifer also explained that she was not allowed to pick J.R. up from school. Rather than go with Timothy, J.R. stayed in the school office until the principal called Jennifer. Jennifer explained to the principal that she was not coming to pick up J.R. and that J.R. had to go with Timothy. After approximately an hour, J.R. finally decided to go with Timothy.

By all accounts, J.R. has routinely refused to go with Timothy when either Jennifer or Lawrence have taken J.R. to the agreed on meeting place for transfers. Timothy conceded that he has never heard Jennifer tell J.R. that she should not go with Timothy. Timothy also testified that he has not observed any interference that Lawrence has imposed that would prevent J.R. from participating in parenting time with Timothy. Jennifer testified that she has never intentionally interfered with Timothy's time with J.R. She testified that she has never told J.R. that it was up to her if she wanted to see Timothy. Similarly, Lawrence also testified that he has never told J.R. that she does not have to go with Timothy.

When Jennifer transported J.R. to the exchanges, she attempted to convince J.R. to join Timothy for parenting time. In addition she took J.R. to a joint counseling session wherein both she and J.R.'s therapist talked to J.R. about the consequences of not going to these parenting times with Timothy. Specifically, they discussed Timothy's feelings when J.R. refused to go with him and discussed how J.R. does not get to make the decision of whether she goes with Timothy during his parenting time. Jennifer has also attempted other strategies to convince J.R. to go on visitations such as telling J.R. that Timothy's dogs and cats would miss her if she does not go and that she would miss celebrating her younger half-brother's birthday if she did not go with Timothy. Jennifer consulted with Timothy regarding whether he had any further suggestions for how to get J.R. to go with him for his parenting time. She explained that J.R. willingly gets into the car when it is time to go meet Timothy but when it is time to leave with Timothy she does not get out. Jennifer testified that she told Timothy that the only way she could get J.R. out of the vehicle was to "push [J.R.] out or drag [J.R.] out. . . ." Timothy agreed that they should not physically remove J.R. from one vehicle to the other. In their electronic communication with each other, he said "neither of us can or should physically drag her from one vehicle to the other. We are on the same page, thank you for trying." She explained that she has tried everything she can think of to get J.R. out of the vehicle and ultimately decided to stop going to the exchanges personally in hopes that if Lawrence took J.R., Timothy could more directly attempt to convince J.R. to participate in the parenting time.

Lawrence began taking J.R. to exchanges on April 24, 2020. When Lawrence transports J.R. to the exchanges, he gets out of his vehicle and moves away so that Timothy can go up to the vehicle and try to persuade J.R. to come with him. However, Timothy testified that he will not get out of his vehicle and approach Lawrence's vehicle since there have been past and present protection orders that prohibit Timothy from having contact with Jennifer or Lawrence.

In her electronic communication with Timothy, Jennifer conceded that it was not Timothy's responsibility to convince J.R. to go with him but she wanted Timothy to see for himself

how difficult it was. Timothy has talked to J.R. on the phone and communicated directly to her that he would like her to participate in the parenting time with him. At one of the scheduled exchange times, he handwrote a sign and put the sign on a window so Lawrence and J.R. could read it. The sign read "please let's start our visit." Around the time of J.R.'s birthday, he made a cake and delivered a note encouraging J.R. to start their visit. However, according to Jennifer he has also tried to use guilt to convince J.R. to exit the car. For example, he has put a picture of Jesus in the driver's side window of his car. According to Jennifer, Timothy has "tried to use religion as a means to control [J.R.]"

Jennifer also testified that she punished J.R. in response to her refusals to get out of the car and go with Timothy for his parenting time. Jennifer testified that J.R. has been grounded on multiple occasions, her electronic devices have been taken away numerous times, and she has required J.R. to perform extra chores. J.R. told Jennifer that she would rather be grounded than go with Timothy. During her cross-examination, Jennifer conceded that she has not punished J.R. every time that she would not go with Timothy, but she has informed Timothy of the punishments she has imposed. None of her efforts were successful as J.R. continued to refuse to exit the car at the exchanges.

Jennifer also offered Timothy two weeks of make-up time over the summer because J.R. would not go with Timothy for his parenting time. Jennifer instructed Timothy that he could pick up J.R. from summer school so that she would not have a choice but to go with him. He did not receive this make-up time, in part, because he did not respond to Jennifer's offer.

On August 7, 2020, the district court entered an order finding that Jennifer was not in willful contempt of the previously entered modified decree of dissolution. While the district court found that it was clear that Timothy was not receiving his parenting time, the district court also found that Jennifer had made a concerted effort to encourage J.R. to spend time with Timothy. Ultimately, the court did not find that Timothy was able to prove by clear and convincing evidence that Jennifer willfully disobeyed the court order.

Timothy timely appeals to this court.

ASSIGNMENTS OF ERROR

In his brief on appeal, Timothy assigns six errors. Timothy assigns that the district court erred in the following respects: (1) finding that Timothy had not met his burden of proof to show willful contempt, (2) finding Jennifer made a concerted effort to encourage J.R. to spend time with Timothy, (3) finding Jennifer was not willfully in contempt, (4) finding Jennifer was more credible than Timothy, (5) denying Timothy's request for Jennifer to pay his attorney fees, and (6) not fashioning a purge plan.

In the "Argument" section of his brief on appeal, Timothy only directly argues his first and third assignments of error. However, in support of his argument that the district court erred in finding that Jennifer was not in willful contempt, he also argues that Jennifer did not make a concerted effort to encourage J.R. to spend time with Timothy. Timothy fails to argue the final three assignments of error.

In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. See *U.S. Pipeline v.*

*Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019). See, also, Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2014) (requirements for assignments of error section in brief of appellant; consideration of case is limited to errors assigned and discussed); § 2-109(D)(1)(i) (content rules for argument section of appellant's brief). When a party fails to follow the rules of the Nebraska Supreme Court, an appellate court may proceed as though the party had failed to file a brief, or alternatively, may examine the proceedings for plain error. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). The decision to proceed on plain error is at the discretion of the appellate court. *Id.*

We decline to address any assigned errors which were not argued and supported in the "Argument" section of Timothy's brief. We note that Timothy does restate his sixth assignment of error within the argument section at the close of his brief. However, an argument that does little more than to restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). As such, we will only address Timothy's assigned and argued assertions that the district court erred in failing to find that Timothy met his burden of proof and that Jennifer was in contempt of the court's order regarding parenting time.

STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determination of whether a party is in contempt and of the sanction to be imposed are reviewed for an abuse of discretion. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021).

ANALYSIS

In his brief on appeal Timothy both assigns as error and argues that Jennifer willfully violated the parenting plan contained in the modified decree of dissolution by failing to ensure that he received his designated parenting time with J.R. Timothy asserts that instead of forcing the child to cooperate with his parenting time, Jennifer attempted to delegate this responsibility to others, including to J.R.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Civil contempt requires willful disobedience as an essential element. *Id.* Willful means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Willfulness is a factual determination to be reviewed for clear error. *State on behalf of Mariah B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018). Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *Id.*

In support of his argument, Timothy relies on *Martin v. Martin, supra*, wherein the Supreme Court upheld the trial court's determination that a mother was in willful contempt of

court because the father was not able to exercise his court-ordered parenting time and the mother had a consistent pattern of transferring her responsibility to her children. In one incident, the children initially came out of the mother's residence to the father's vehicle to begin his parenting time. *Id.* However, one child returned to the mother's residence and then told the father that the mother said that the children could stay with her. *Id.* The mother testified as to this incident and repeated that she "was '"not gonna shut [her] door"'' on them." *Id.* at 109, 881 N.W.2d at 178. In the second incident, the father received a text message from one child saying that the child did not want to see the father. The father then forwarded the message to the mother. Upon receiving the text message, the mother said that she has encouraged them to attend parenting time with their father, but it "'sounds like they told you what they want.'" *Id.* at 110, 881 N.W.2d at 179. In the third incident, the father received text messages from one of the children that he did not want to see the father and the mother responded that the children should work out an arrangement with the father. In the final incident, the mother was out of town and the children refused to spend time with the father. The mother spoke to the children over the phone to convince the children to go. The father asked the mother to punish the children for not going with him but the mother declined to do so and testified that she told the father that she would have to have a conversation with the child in the future.

We find the present case factually distinguishable from *Martin v. Martin, supra*. Accordingly, we also find that the court did not abuse its discretion in refusing to find Jennifer to be in willful contempt. In the present case, Jennifer actively attempted to convince J.R. to attend the court-ordered parenting time. There was no evidence that Jennifer ever told J.R. that she was free to refuse to go with Timothy for his parenting time. To the contrary, Jennifer testified that when J.R. did not want to go with Timothy after school, Jennifer reiterated to her that she was not coming to pick her up. Jennifer also told the same information to the school when they contacted her. She also punished J.R. repeatedly for not attending the court-ordered parenting time. While Jennifer conceded that this did not occur every time, Jennifer testified that J.R. was grounded multiple times, had her electronics taken away five or six times, and had to do extra chores if she did not attend. When that did not work, Jennifer solicited advice from Timothy about how she could convince J.R. to attend these sessions. She arranged a joint counseling session with J.R.'s counselor wherein they both attempted to convince J.R. to go on the scheduled visitations. She also did not oppose Timothy's suggestion that they have family therapy sessions with J.R. After numerous attempts, Jennifer arranged for Lawrence to attend the exchanges so that Timothy could convince J.R. to attend the parenting time. While Timothy did make signs and set out a birthday cake, he did not personally approach the vehicle in order to make a verbal effort to convince J.R. to attend the parenting time.

It is clear from the record that Jennifer attempted various ways to convince J.R. to attend the parenting time with Timothy. Jennifer communicated with Timothy about the efforts she attempted, in order to convince J.R. to attend the parenting time. Timothy stated that neither Jennifer nor he should physically drag J.R. from one vehicle to another. After he agreed that Jennifer should not physically remove J.R. from the vehicle, Timothy thanked Jennifer for her attempts to convince J.R. to attend the parenting time.

Rather than delegating her responsibility to J.R. as to whether she would attend Timothy's parenting time, the evidence supports the district court's finding that Jennifer actively attempted to convince and coerce J.R. to attend the parenting time granted to Timothy. Upon our review of the record, we cannot say that the district court abused its discretion in not finding Jennifer in willful contempt of the court's visitation order.

CONCLUSION

For the reasons stated above, we affirm the determination of the district court.

AFFIRMED.