IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KAUFMAN V. KAUFMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JESSICA B. KAUFMAN, NOW KNOWN AS JESSICA B. DAVIS, APPELLANT,

V.

NICHOLAS M. KAUFMAN, APPELLEE.

Filed March 25, 2025.    No. A-24-441.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

Abby Osborn, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Megan E. McDowell, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Jessica B. Kaufman, now known as Jessica B. Davis, appeals from the Lancaster County District Court's order finding her to be in contempt of the decree of dissolution which dissolved her marriage to Nicholas M. Kaufman, and ordering her to comply with a purge plan for the contempt. For the reasons stated herein, we affirm.

## BACKGROUND

On November 7, 2023, the district court entered a decree dissolving Jessica and Nicholas' marriage. As is relevant to this appeal, the decree divided the parties' property such that Jessica was required to pay the parties' Capital One credit card debts. There were two credit card accounts, one account ending in 5388 with a total remaining debt of $6,000 and one account ending in 5250

- 1 -

with a total remaining debt of $4,000. Jessica was also ordered to pay $2,000 toward Nicholas' attorney fees:

> Judgment is entered against [Jessica] and in favor of [Nicholas] in the amount of $2,000.00 for [Nicholas'] attorney fees and costs incurred herein. Commencing on December 1, 2023, and continuing on the first day of each month thereafter until the balance is paid in full, [Jessica] shall pay such attorney fees and costs, through the Clerk of the District Court, in the amount of $200.00 per month. In the event [Jessica] fails to pay any sums due on said judgment as set forth herein the entire judgment shall be become immediately due and payable.

Nicholas was ordered to pay an equalization payment to Jessica in the amount of $29,233.59. Such payment was to be made within 120 days of the November 7 decree, and if it was not, interest was to accrue on the amount "at the rate of 7.58% from and after the date of the entry of this Decree until paid in full."

On January 11, 2024, 2 months after the decree was entered, Nicholas filed a verified motion for an order to show cause with the district court claiming that Jessica was in contempt of the terms of the decree in various respects. Among other claims, he alleged that Jessica failed to pay $200 toward his attorney fees in the month of December 2023, which resulted in the entire $2,000 attorney fee judgment becoming immediately due and payable and that she failed to pay any amount toward the debts associated with the Capital One credit cards, which forced him to have to make payments on the debts. An order to show cause was issued on January 16, 2024, with a hearing on the matter scheduled for January 19.

At the January 19, 2024, hearing, Jessica asked that she be appointed with new counsel because counsel who had represented her during the dissolution proceedings had withdrawn from the case. Jessica informed the court that she earned $16 per hour and that she was working approximately 36 hours per week. The court found that Jessica was currently indigent, appointed counsel to represent her, and continued the show cause hearing so that Jessica's new counsel would have time to prepare.

The show cause hearing was held on April 5, 2024. Both Jessica and Nicholas attended the hearing with counsel and both testified about the allegations in Nicholas' verified motion.

As is relevant to this appeal, Nicholas testified that Jessica had not made any payments toward his attorney fees after the decree was entered in November 2023. He noted his understanding that the decree provided that if she missed any monthly payment, the entire $2,000 would be immediately due in full. He believed Jessica was in contempt for her failure to pay the $2,000 attorney fee.

Nicholas testified that after the decree was entered in November 2023, Jessica failed to make any payments toward the credit card debt assigned to her in the decree. He noted that even though the debt was not assigned to him, he paid off the remaining balance of the Capital One credit card account ending in 5250. According to the property division spreadsheet attached to the decree, $4,000 was owed on this account. The balance remaining for the account ending in 5388 was sent to a collection agency. The collection agency had filed a lawsuit against Nicholas, which he testified was still pending.

During his testimony, Nicholas agreed that pursuant to a temporary order entered by the district court prior to the conclusion of the divorce proceedings, he still owed Jessica accrued temporary spousal support. He noted that Jessica still owed him money based on obligations enumerated in the temporary order as well. Nicholas admitted that he had not yet paid to Jessica the equalization payment ordered in the decree. He explained that he had applied for at least six loans to obtain the funds to pay her, but was unable to obtain a loan because of his bad credit. Jessica's failure to pay the Capital One credit card debt contributed to Nicholas' bad credit rating. Upon questioning by Jessica's counsel, Nicholas agreed that the "easiest" way to be reimbursed by Jessica might be to offset the amounts she owes to him under the decree to the equalization payment he owes to her. However, he later testified that he desired Jessica to address the outstanding balance on the remaining Capital One account so that he could be taken off that account, rather than having such amount be offset from his equalization payment.

Jessica testified that she currently works for a memory care facility in Hastings, Nebraska, and that her hourly wage had increased to $18 an hour. While she testified that she was hired to work "full-time" with opportunities for overtime, her paystubs from the time the decree of dissolution was entered in November 2023 to the time of the show cause hearing in April 2024 do not reflect that she was working full time. For example, for the 2-week pay period beginning on November 5, 2023, and ending on November 18, Jessica worked a total of 51 hours. When asked on cross-examination why she did not work full time during that pay period, she indicated that she had to take time off to take care of her children. Notably, Jessica did not receive custody of the children in the decree of dissolution and receives only 48 hours of parenting time during a 2-week period. For the next few 2-week pay periods, Jessica worked less than 50 total hours, rather than the full-time hours she was hired to complete. The only 2-week period in which Jessica worked full time since the decree of dissolution was entered was from February 25, 2024 to March 9, 2024. During this time period, Jessica also worked approximately 21 hours of overtime.

During her testimony, Jessica denied that she had any other employment or income for the time that she was only working part time. She testified that she simply did not have an ability to pay on the credit card debt or toward Nicholas' attorney fees based on the income she had received, particularly given that her child support obligation was deducted from her paychecks. She indicated that she had not received any prior notice of the collection action regarding the credit card account ending in 5388.

When Jessica was asked whether she would agree to offset the amount Nicholas owed to her by what she owed to him, she responded, "Yes, within consideration. . . . With respect to the numbers that is owed in the decree. . . . And as of the date of the decree, I think would be fair." However, Jessica was unable to provide exact numbers as to what she owed to Nicholas and what he owed to her.

After the hearing, the district court entered an order finding Jessica in contempt for failing to pay Nicholas' attorney fees as provided in the decree and for failing to either make payments on the credit card debt awarded to her or to reimburse Nicholas for the payments he made toward this debt. The court noted that under the decree, Jessica was allowed to pay both obligations over time, but had made no payments whatsoever. The court established a purge plan for each finding of contempt.

The district court sentenced Jessica to 7 days in jail for her failure to pay Nicholas' attorney fees pursuant to the language of the decree. She could purge herself of the jail sentence by paying through the clerk of the district court's office $200 per month for 10 months beginning on June 1, 2024. If she failed to comply with the purge plan and was imprisoned, she could be released from jail by paying the lessor of $2,000 or all arrearages then due and owing. The district court also sentenced Jessica to 7 days in jail for her failure to make payments on the Capitol One credit card debts as ordered in the decree. Specifically, the court entered judgment in the amount of $4,559.60 for the amounts Nicholas paid toward the credit card debt since April 23, 2022. (Although our record is not clear, this appears to be the date the petition for dissolution was filed.) Jessica could purge herself of the jail sentence by paying to the district court $200 per month, commencing on June 1, 2024, until the debt was paid in full.

> If [Jessica] complies with this payment schedule for 24 months, [she] will be purged of contempt and the foregoing sentence shall be deemed null and void. However, if [Jessica] fails to comply with said purge plan, a commitment shall issue forthwith and [she] shall be imprisoned pursuant to said non-compliance. If a commitment is issued as a result of non-compliance and [Jessica] is jailed, [she] may be released from said commitment and purged of her contempt upon payment of the lessor of $2,000.00 or all arrearages then due and owing.

The district court commented on the suggestion that amounts each party owed to the other could be offset:

> At trial the parties suggested the Court offset the amounts each party owes the other under the Decree. The Court has considered this request and declines to do so. Each party has a history of not paying the other despite Court orders to do so and while creative solutions are appreciated, the Court is concerned that such solutions will encourage more of the conduct that has already occurred and create more enforceability problems. The parties should pay the amounts they are ordered to pay.

Jessica appeals from the district court's order here.

ASSIGNMENTS OF ERROR

On appeal, Jessica assigns and argues that the district court erred in finding that her failure to pay the attorney fees and credit card debt was willful, as she clearly did not have the ability to pay those amounts; in setting the monthly payment amounts for the purge plans which were well above her ability to pay; and in failing to offset the amounts owed to her and to Nicholas under the terms of the decree.

STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021).

ANALYSIS

In her first assignment of error on appeal, Jessica asserts that the district court erred in finding her in contempt of the decree of dissolution by failing to pay toward Nicholas' attorney fees and by failing to pay toward the Capital One credit card debt. Specifically, she asserts that she "could not willfully violate the court's order because she did not have the ability to pay the amounts owed." Brief for appellant at 10. Upon our review, we find that the evidence presented at the show cause hearing refutes Jessica's claim that she was financially incapable of paying toward the attorney fees and credit card debt. Accordingly, we affirm the district court's decision to find Jessica in contempt.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Civil contempt requires willful disobedience as an essential element. *Id*. Willful means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. Willfulness is a factual determination to be reviewed for clear error. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018). Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *Id*.

Jessica contends that the evidence at the show cause hearing demonstrated that she did not have the financial means to pay for Nicholas' attorney fees and the credit card debt as was ordered by the decree. She notes that her earnings have been insufficient to allow her to pay her obligations as required by the decree, particularly given her child support obligation. Our review of the evidence rebuts her claims. First, we note that Jessica failed to file an appeal from the decree of dissolution contesting the obligations imposed upon her. Instead, immediately after the decree was entered in November 2023, she failed to pay the required $200 per month toward Nicholas' attorney fees or to make even minimal payments toward the credit card debt assigned to her.

During this same time period immediately after the decree was entered, Jessica only worked part time even though she admits that she was hired to work full time. During some 2-week pay periods, Jessica worked less than 30 total hours. She testified that her limited hours were due to her having to take care of her children, however, she also admitted that she was not awarded custody of the children in the decree and that they lived with Nicholas a majority of the time. Indeed our review of the parenting plan reveals that Jessica's regular parenting time is limited to alternating weekends. Jessica failed to offer any other explanation or evidence to explain why she chose not to work full time. She did testify that she did not seek out any other employment in an effort to help pay her obligations, and, as we stated above, she did not make even minimum payments toward the debt. Such evidence indicates that although Jessica was aware of the amounts she was required to pay under the decree, she voluntarily put herself in a position to be unable to pay such debts. Jessica's choice to work only minimal hours and to fail to supplement her income does not prove that she was financially incapable of paying the debt. Finally, we note that Jessica did not present any evidence regarding her own monthly living expenses. We have no record of what, if any, other obligations she may have that would have prevented her from making payments

on the award of attorney fees or the credit card account. The district court did not abuse its discretion in finding her in contempt of the decree.

In her brief on appeal, Jessica next argues that the district court erred in setting her purge plan, as she is not financially capable of paying the monthly amounts required to keep her out of jail.

Contempt proceedings may both compel obedience to orders and administer the remedies to which a court has found the parties to be entitled. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). A civil sanction is coercive and remedial; the contemnors "carry the keys of their jail cells in their own pockets" because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance. *Id.* at 541, 878 N.W.2d at 565 (internal quotations omitted). In contrast, a criminal sanction is punitive because the sentence is determinate and unconditional. *Sickler v. Sickler, supra*.

The ability to comply with a contempt order is the dividing line between civil and criminal contempt. *Id.* A present inability to comply with a contempt order is a defense to incarceration, not a finding of contempt. *Id.* The contemnor has the burden of asserting and proving an inability to comply with the contempt order to avoid incarceration or to purge himself or herself of contempt by showing attempts to exhaust all resources. *Id.* Therefore, the contemnor must be afforded the opportunity, before being incarcerated, to demonstrate an inability to comply. *Id.*

As we explained above, the evidence presented at the show cause hearing does not support Jessica's contention that she lacks the present ability to pay on the purge plan established by the district court. Such evidence revealed that Jessica is failing to work full-time hours, when such hours and additional overtime hours are available to her through her current employer. She did not adequately explain or excuse her decision to work minimal part-time hours. Moreover, Jessica did not provide any evidence to suggest that she has exhausted all of her resources. In particular, she testified that she did not seek out any additional employment to supplement her income, nor did she provide any evidence of her other assets or of her monthly expenses. Based upon the evidence presented, we find no merit to Jessica's assertion that she is currently financially incapable of paying on the purge plan established by the district court.

Finally, in her brief on appeal, Jessica challenges the district court's failure to order that the debts Nicholas owes to her be offset by the debts she still owes to him. As a part of her argument, she contends that at least with respect to the expenditures Nicholas made toward the credit card debt, she and Nicholas agreed to such an offset in their testimonies at the show cause hearing. In his brief, Nicholas states the following regarding this assignment of error: "[Nicholas] takes no position and submits on this assignment of error." Brief for appellee at 11. Upon our review, we find no abuse of discretion in the court's failure to order the offsetting of the parties' debts to each other.

Contrary to Jessica's assertion in her brief on appeal, our reading of the record does not demonstrate that the parties unequivocally agreed to a fixed amount of what should be offset between their obligations. The record indicates that both parties expressed willingness to offset amounts Nicholas had paid on the credit card, but they did not have a meeting of the minds on how much that amount should be. During his testimony, Nicholas agreed that offsetting the debts would "be the easiest way to be reimbursed." However, he expressed that the total amount he paid on one of the accounts should be utilized. Significantly, the district court entered judgment only for the

payments he made on that account after April 23, 2022. Nicholas also was reluctant to take on the obligation of paying down the remaining account that was the subject of the collections lawsuit. Nicholas wanted Jessica to pay that debt directly to Capital One and to relieve him of any responsibility for such debt so that his credit would improve. Similarly, Jessica initially agreed to offsetting the debts, but she appeared to disagree with the specific amount of her debt that Nicholas proposed to offset against his equalization payment to her. Additionally, we note that our record suggests that the parties still owe each other funds related to temporary orders entered by the district court while the dissolution proceedings were pending.

In declining to order the offset, the district court noted that Nicholas and Jessica have "a history of not paying the other despite Court orders to do so" and that an offsetting of their debts "will encourage more of the conduct that has already occurred and create more enforceability problems." During the closing arguments, the court stated that it was very hesitant to offset Jessica's obligation to pay Nicholas' attorney fees given that her fee payments would be directed to counsel by the clerk's office rather than Nicholas himself. Given that the same district court judge had authored the parties' temporary orders, decree of dissolution, and now the contempt order, we find that the judge was uniquely positioned to understand and appreciate the parties' willingness to comply with offsetting of debts. We give deference to the court's concern that offsetting the obligations might encourage further failures of the parties to honor the obligations placed upon them by the past orders of the court. Such deference, coupled with the parties' failure to unequivocally agree to an amount of the offset, leads to our conclusion that the district court did not abuse its discretion in failing to order the offsetting of the debts. We note that nothing in the court's order precludes the parties from making a subsequent agreement that specifically prescribes the nature and amount of the obligations they are seeking to offset. Such an agreement could then be submitted to the court for its review.

CONCLUSION

For the reasons stated above, we affirm the decision of the district court in finding Jessica in willful contempt of the decree of dissolution and in establishing the terms of the sanctions and the corresponding purge plans.

AFFIRMED.